# George *v.* Kern, Appellant.

*Deeds—Boundaries—Fence—Evidence.*

1. In an action of trespass where the issue was whether an old fence marked the boundary line between the properties of plaintiff and defendant, the deeds of both parties and surveys made therefrom with the maps and plots are competent evidence when followed by testimony showing the fence to be on the dividing line, inasmuch as they would show recognition and acceptance by the prior owners.

2. In the effort to establish the disputed line between the plaintiff's and the defendant's land, as being identified with the fence line and the fence line with it, the fence and the line's existence as such in its entirety from the time it was first known or exhibited by records, may be shown. It is immaterial that in later years the line was cut up in sections forming boundaries between different owners, and it does not matter, if the disputed section in question conforms in all general requirements to the original line as mentioned in the several deeds forming the chain of title. If slight variations exist their effect unexplained will be for the jury.

3. On the trial of such an issue where the existence of a particular corner is evidenced not only from the calls in the defendant's and his predecessor's deeds and the surveys therefrom, but from the testimony of witnesses who knew that it had been there as an established corner for a long period of time, the court is not in error in charging that the recognition of this point on the part of the grantors and grantees in

the deeds had a material bearing on the location of the fence as testified to by the surveyors.

4. The court cannot be convicted of error in stating to the jury that a line run by the defendant's surveyor could not be of much assistance to them, if it appears that the line was not made from any call in a deed, nor with reference to the location of any old fence, nor made upon a course and distance given by any authenticated record between two established corners.

Argued Dec. 15, 1914. Appeal, No. 264, Oct. T., 1914, by defendant, from judgment of C. P. Carbon Co., Jan. T., 1913, No. 32, on verdict for plaintiff in case of Charles George v. Osville P. Kern. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Trespass in the nature of a quare clausum fregit. Before BARBER, J.

At the trial it appeared that the plaintiff and defendant and their predecessors in title had maintained a fence between them for a distance of thirty rods for forty years or more. The parties agreed to a rebuilding of the fence, but the defendant built a new fence not on the line of the old fence, but over on what the plaintiff claimed was his land.

The court admitted under objection and exception the deeds of plaintiff and his predecessors in title with surveys, maps and plots made therefrom. [1]

T. B. Craig, a witness for plaintiff, was asked this question: "Q. Did you survey the southwest corner of the Thomas Craig tract? A. Yes. Q. And the southwest corner of the Kern tract? A. Yes. Q. Have you seen Mr. Kern's deed? A. Yes. Q. What was the distance called for in his deed?"

Mr. Sitler: Defendant objects for the reason that the line below the road would not control the line above the road.

The Court: You mean south of the road.

Mr. Sitler: The line south of the road would not control the line north of the road, and only the line north of the road is in dispute.

Mr. Freyman: In reply would say, under the pleadings we claim title to an acre of ground which is described in plaintiff's statement, and the boundary line must be fixed between the southwest corner of the defendant's property and the northeast corner of the George property, and that boundary line cannot be fixed by running a part of the distance of that line and can only be fixed by running a line from one corner to the other.

Mr. Sitler: The plaintiff has made it a broken line above and below the road.

The Court: There has been some evidence of a broken line, but the original surveys and the draft offered in evidence with the patents, as well as the deeds, show a straight line between the properties on the north and south of the road. It will be for the jury to determine what effect that offset will have. For the purpose of showing where the original line is, it will be necessary to have this point at the extreme corners. As a basis of any evidence bearing on that it would be evidence. Objection overruled. Exception. [2]

"Q. What do you find the distance? A. Thirty-five perches."

Plaintiff's witness, A. A. Ziegenfus, being on the stand, testifying in chief, was asked:

"Q. You know the division fence between the Kern property on the east and the other three properties on the west? A. Yes. Q. How long have you known this division fence? A. I have known this division fence for the last thirty or thirty-five years."

Mr. Sitler: I ask that that be stricken out. Object that the question embodies what is not a fact in the case. North of the road the fence was between Kern and one adjoining property owner. Below it was between Kern and another property owner, acquiring title from a different source. The question that is put in the witness' mouth, so to speak, is a question of that line fence between Kern and naming other property owners col-

lectively, thus embodying in the question what is not legitimate, the fence between Kern and one property owner being an entirely different fence from the one below the road. I do not think they have the right to embody that in a single question answerable by "Yes."

The Court: While it is true that the question at issue is the location of a divisional line between the plaintiff and the defendant on the north side of the road, yet during the entire progress of the case, evidence has been admitted showing the line from the south end of the Kern and Ziegenfus properties on Stony Ridge to a point on the north end of the division line of the properties of Kern and George. That part of the line on the south of the road has been constantly referred to in the drafts, courses and distances, and the testimony of witnesses as bearing upon the contention of the plaintiff that it is a straight line from the Stony Ridge corner to the north end, and as bearing upon the location of the fence—where that fence actually was. Objection overruled and bill sealed for defendant. The motion to strike out is denied. [3]

"Q. What kind of a fence was that, Squire? A. It was an old rail fence. . . . Q. I now ask this witness the same question asked this morning of Mr. Craig. I know the court has ruled, but I press the question, and will assign an additional reason, for the sake of showing the interest of the witness as well as of Mr. Craig. I ask this witness whether Craig and Ziegenfus have not had Mr. Kern notified, through Mr. Freyman, to remove that fence which was built in pursuance of agreement between Kern and Ziegenfus?"

Objected to as immaterial.

The Court: That might be some argument to a jury if you were supported by evidence; but as a legal proposition, they both admit notice of this alleged agreement between Ziegenfus and Kern. If they bought with notice of that agreement they would not be in a very good legal position to demand anything more.

30 · GEORGE *v.* KERN, Appellant.

Statement of Facts—Charge of Court below.   [60 Pa. Superior Ct.

Assume they are endeavoring to acquire more property, that would be simply a matter of showing their interest in the controversy, and that would be legitimate argument to a jury because they owned adjoining property, but as affecting this plaintiff I cannot see how any agreement of that kind or any notice would affect this plaintiff, or how it has any bearing on the case.  Objection sustained and bill sealed. [5]

Plaintiff presented these points:

8. In the deed from Christopher Kern and wife to Levi Kern, dated May 27, 1837, the southwest corner of the property therein conveyed, now owned by Mr. Kern, the defendant, would appear to be thirty-eight perches west from the southeast corner of the Thomas Craig property, now owned by Teel and Kern, as shown by the connected draft made by Thomas B. Craig in evidence, and in the deed from Charles Mendsen, assignee of Levi Kern to Stephen Kern, dated October 1, 1878, the distance between the same corner, is thirty-five perches; also in the deed from Sarah Kern and Stephen E. Kern, administrators of Stephen Kern, deceased, to Osville P., Kern, the defendant, dated April 1, 1882, the distance given between the same corners is thirty-five perches.

The distance of thirty-five perches given in the two deeds last stated would be an admission or recognition on the part of the grantors and grantees in said deeds that the correct distance between said corners is only thirty-five perches, which would agree with the location of the old division fence as located and testified to by all the surveyors. *Answer:* Affirmed. [7]

The court charged in part as follows:

[Considering the red and the dotted line from the stone corner at the "Chestnut Stump" marked letter "C," and also the green line marked "D,"—I think the testimony is they ran that line from the north. In reference to these lines the court feels obliged to say

to you that neither the red line nor the green line can be of much assistance to you. Starting some seven or eight feet over on the hill north of the road from what defendant terms his north corner, they sighted over to where the old chestnut corner was. Now the difficulty with that sort of a line is that as the surveyor sighted it across there, he would run just where he pointed his instrument. If the instrument would be in the correct place, the line would be correct. But the south corner, as I told you, is not called for in defendant's deed, nor in the deed of any of his predecessors, except that of Levi Kern, who never took possession thereof. So that thirty-eight perch corner can have little bearing in this case. If they want to run the line from the corner they would have to run it south twenty-two and three-fourths degrees east, which would bring it about forty feet west of the Kern line all the way over. The red line is simply a sight line, and is not run by courses and distances and not from any established corner. The surveyor simply set up his instrument and ran his line from where the defendant claims this north corner to be—this thirty-eight perch corner. I have given you the view of the court in relation to this thirty-eight perch corner.] [8]

[The green line represents the line running from that thirty-five perch corner. The difficulty is that he does not start from any established corner. He starts up at the north where they claim a corner and trees, and runs south. It is all important when you run lines that you start from an established corner, and then run the proper courses and distances given in the lines. It seems this dotted line is the only line to which consideration could be given which would be of assistance to you in this large tract.] [9]

[Then you come to the dotted line which was started from the thirty-eight perch corner and ran across to the post and that was intended to be, so far as the south side of the road is concerned, to be the dividing line of this tract, which Eugene Ziegenfus agreed that Mr.

32    GEORGE *v.* KERN, Appellant.

Charge of Court below—Opinion of the Court.   [60 Pa. Superior Ct.

Kern should have, and that dotted line was to lie where the fence was to be put.   Although stakes were put up they did not call this conclusive as to the northern boundary.] [10]

[Defendant says at one time in his testimony that he did not know of any corner at the north end.   He took the corner at the north where he made a mark on the rails of the fence running east and west.   This is the evidence as to how he established that corner.   Therefore the dotted lines represent his claim and is to be considered so far as supported by the evidence, as being the end of the brush fence on the south and the fence on the north.] [11]

[You will remember what the defendant said about the rails of the old fence coming down to the road and resting on the rails going up from the east just below the old post.  .   .

Mr. Costenbader said the rails of the fence on that side did not strike the post of my fence extending to the little cherry tree.] [12]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were various rulings and instructions as above, quoting them.

*Daniel W. Sitler*, for appellant, cited: Reiter v. McJunkin, 194 Pa. 301.

*Ben Branch*, with him *Wm. G. Freyman*, and *W. G. Thomas*, for appellee, cited: Wolf v. Wolf, 158 Pa. 621.

OPINION BY KEPHART, J., May 14, 1915:

This appeal involves the determination of twenty-nine assignments of error.   The plaintiff's statement, material to the questions involved, is as follows: "Whereas, there was an old division fence between the property of the plaintiff and the property of the defendant which

had stood there and had been maintained and recognized by the plaintiff, and his predecessors in title, and the defendant, and his predecessors in title, as the dividing line between their properties, and which said fence was grown up with brush, and the brush having been cleared away by the plaintiff, it was agreed by the plaintiff and the defendant that a new fence should be put up by them on the line where the old fence stood. . . . The said defendant in great haste dug post holes on the plaintiff's land and put up a fence the entire distance between their lands, not on the line where the old fence stood but over on the lands of the plaintiff of the width of about one rod at the public road. . . . And the plaintiff then put up his portion of the fence on the old line with the posts and material which he had there, as before stated, and the fence so erected on the original line and where the old fence stood was allowed to remain for a short time. . . ."

It is clear that the issue thus framed was the location of this old line which had been recognized between the property owners, and the location of the old fence with reference to that line. Plaintiff's contention was that they were identical. For the purpose of showing that the fence had been recognized by the defendant and his predecessors in title, and the plaintiff and his predecessors in title, as the dividing line, their deeds were offered in evidence showing this line by its course and distance, which, when run by survey, corresponded to the fence line on the ground. The deeds and surveys made therefrom, with the maps and plots, were competent evidence when followed by testimony showing the fence to be on the dividing line. They would show recognition and acceptance by the prior owners. In addition to this testimony there is the evidence of witnesses who had known this fence for forty years and upwards, and who fixed its location and position during that time between the two properties. In the effort .to establish the disputed line between the plaintiff's

and defendant's land, as being identified with the fence line and the fence line with it, the fence and the line's existence as such in its entirety from the time it was first known or exhibited by records may be shown. That in later years the line was cut up in sections forming boundaries between different owners does not matter, if the disputed section conforms in all general requirements to the original line as mentioned in the several deeds forming the chain of title. If slight variations exist their effect, unexplained, on the plaintiff's contention, would be for the jury. The plaintiff was not limited in the scope of his inquiry to the fence as it existed on his eastern boundary immediately adjoining plaintiff's property. It was therefore not error for the court to consider the line fence as it existed below the road as affecting and as an aid in determining the line fence between the plaintiff's and defendant's property above the road, on the plaintiff's theory, supported by evidence, that there was no change in this fence prior to the trespass complained of.

The court was right in declining to permit appellant to cross-examine witness A. A. Zeigenfus as to the notice given through Mr. Freyman. His interest, while to some extent identical with this plaintiff, was not of sufficient importance in the trial of this case to make this notice competent evidence to affect the plaintiff.

Much of the evidence to establish the fact that the fence was recognized by prior owners as the dividing line comes from the existence of the southwest corner of the defendant's property and the plaintiff's starting point of the disputed line. It was called throughout the trial as the thirty-five perch corner. The deeds to this defendant and his immediate predecessor in title called for this corner. In an old deed dated 1837, in the defendant's line of title, it called for a southwestern corner at the end of a thirty-eight perch line. The defendant could not extend his lines beyond those called for in his own deed to plaintiff's detriment, unless the lines

so extended did not reach the call mentioned in the deed, or by adverse possession of the land owned by the plaintiff. The evidence of possession was not of that character from which it might be said that the defendant had acquired any right thereunder.

In construing the defendant's deed the court held substantially as we have stated, and appellant lays too much stress on the court's remark that "thirty-five perches must be taken as the correct corner," as being a definite finding of fact. It must be read in connection with other parts of the charge. As stated by the learned president judge: "Now, the first thing to determine is whether the thirty-five or the thirty-eight perch corner is the correct one for starting the northward line." The existence of the thirty-eight perch corner, whatever evidence there was to sustain it, would, of course, be for the jury's consideration. The existence of this thirty-five perch corner on the ground is evidenced not only from the calls in the deed and the surveys therefrom but from the testimony of witnesses who knew that it had been there, as an established corner for a long period of time.

There was no error in affirming plaintiff's eighth point as it was a clear presentation of the evidence involved.

Tombler, defendant's surveyor, made several surveys. He first ran the thirty-eight perch line to what is claimed by the defendant as the thirty-eight perch corner. This was done at a time when the defendant was settling with one of the owners below the road for a portion of the disputed land. When this settlement was made, in order to arrive at a location on which to build a new fence, Tombler placed his instrument on a line between a point given him by the defendant on the north and this thirty-eight perch corner on the south. From this sight line, without bearings, he directed stakes to be driven for the proposed fence below the road. This fence can be seen from the photograph. This division

line was not made from any call in a deed, nor was it
made with reference to the location of an old fence
north of the road, nor was it made upon a course and
distance given by any authenticated record between
two established corners. The projected line of the plain-
tiff's eastern boundary from the thirty-five perch corner
was made by this same surveyor in the same manner.
(Ninth assignment.) The court did not commit error
in stating to the jury (eighth assignment) that the
thirty-eight perch corner established by Tombler, could
not be of much assistance to them. Had the north-
ward line therefrom been made with reference to a fence
line on the ground (which all admit was east of this
line below the road), or made from any course or dis-
tance in a deed from which appellant had a right to
claim the existence of this corner, it would have had
more weight. The stakes placed on this line from the
thirty-eight perch corner at the direction of Tombler,
on which the new fence below the road was to be built,
would not be conclusive on this plaintiff. (Tenth assign-
ment.) The evidence shows that prior owners made
no effort to claim to the thirty-eight perch corner.
The court stated precisely what the defendant testified
to (eleventh assignment) and the remarks with respect
to Costenbader's testimony (twelfth assignment) is
fairly deducible from all of his evidence. The fact that
the testimony of Lafayette Kern was not read to the
jury did not prejudice defendant's case.

The court's quotation from the testimony of Mr.
Tombler with reference to the Hower line (fourteenth
assignment) was warranted by the testimony, and the
instruction with respect to the slight variations which
come from an old fence built on a zigzag line, which
might cause the little variations between the fence
north and south side of the road, was not an imposition
on the defendant's rights. There being testimony in the
case that a monument had been placed on the public
road from which a line had been run to plaintiff's prop-

erty, the eighth point, sixteenth assignment, asking that the jury be instructed that the median line would be the proper line on which to measure, was properly denied.

The seventeenth and eighteenth assignments of error complaining of the manner of treating Mr. Hower's testimony, giving it undue prominence, is without merit. The same observation may be made of the court's statement with respect to the testimony of Frank Esch (nineteenth assignment), relative to the concrete post. There was nothing in Mr. George's acts at that time which would be conclusive or convincing that he accepted this concrete post location as being the line of his property.

Assignments of error twentieth to twenty-eighth, inclusive, treat of various expressions of the court with respect to the testimony of witnesses. We have carefully read the statements complained of and the evidence in connection therewith, and the assignments are without merit.

The court throughout its charge clearly presented the defendant's theory of the case, and only endeavored to outline to the jury the issue involved and the material evidence bearing upon it.

The assignments of error are overruled and the judgment is affirmed.